NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180722-U

NO. 4-18-0722

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Woodford County |
| STEVEN L. KNICKERBOCKER, | ) | No. 18CF66 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Charles M. Feeney III, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Justices Knecht and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not abuse its discretion by (1) denying defendant's motion to
continue his trial for substitution of counsel and (2) sentencing defendant to seven
years' imprisonment.

¶ 2    In May 2018, a grand jury indicted defendant, Steven L. Knickerbocker, with one
count of a violation of the Sex Offender Registration Act (Act) (730 ILCS 150/3(a)(2) (West
2018)).  On July 5, 2018, defendant moved to continue his trial so he could hire new counsel, and
the Woodford County circuit court denied his motion.  Seven days later, the court held
defendant's trial, and the jury found defendant guilty of the charge.  At an August 2018 hearing,
the Woodford County circuit court sentenced defendant to seven years' imprisonment.
Defendant filed *pro se* a motion to reduce his sentence, and defense counsel filed an amended
motion to reconsider defendant's sentence.  After an October 2018 hearing, the court denied the
amended motion to reconsider defendant's sentence.

¶ 3        Defendant appeals, contending the circuit court erred by (1) denying defendant's

motion to continue his trial and (2) relying on an improper factor in sentencing him.  We affirm.

¶ 4                                I. BACKGROUND

¶ 5        The May 3, 2018, indictment alleged defendant, a sex offender, knowingly failed

to register within three days of his change of address on April 4, 2018.  See 730 ILCS

150/3(a)(2) (West 2018).  It also noted defendant had previously been convicted of a violation of

the Act (730 ILCS 150/1 *et seq.* (West 2018)) in Woodford County case No. 08-CF-14.  On the

same day the indictment was filed, the circuit court appointed the public defender, Andrew

Lankton, to represent defendant and placed defendant's case on the July 9, 2018, jury calendar.

On May 23, 2018, the State filed its response to defendant's pretrial motion for discovery.  At the

June 6, 2018, pretrial hearing, Lankton noted he had received an offer from the State, and he had

communicated that offer to defendant.  Lankton had also received the State's discovery.  Lankton

requested a July 5, 2018, pretrial hearing date, and the court set the pretrial hearing for that date.

¶ 6        At the July 5, 2018, pretrial hearing, Lankton informed the circuit court he had

met with defendant and reviewed the discovery.  Defendant informed Lankton the day before he

wished to continue his jury trial so he could hire private counsel.  The court asked defendant

what efforts he had made to hire private counsel up to this point.  Defendant responded he had

"just been calling around looking, talking to different attorneys."  The court then asked if

defendant had a particular attorney ready to enter an appearance.  Defendant stated the

following:  "Not yet, Your Honor.  Not yet.  I am looking to get—thinking about Gary Morris,

but I hadn't made up my mind yet.  I haven't decided yet."  The court denied defendant's motion

to continue.

¶ 7        On July 9, 2018, the circuit court stated defendant was second or third on his list

of jury trials. The court held defendant's jury trial on July 12, 2018, and defendant was represented by Lankton. The State presented the testimony of (1) Robert Gillson, a Woodford County detective; (2) Joyce Knickerbocker, defendant's mother; (3) Stacy Knickerbocker-Strum, defendant's sister; and (4) Jesse Strum, defendant's nephew. Defendant testified on his own behalf. In rebuttal, the State called Linda Morrissey, defendant's girlfriend.

¶ 8 Detective Gillson testified that, on August 4, 2017, defendant came into the sheriff's office and reported he was moving from 606 Santa Fe Trail in Metamora, Illinois, which is in Woodford County, to Oakbrook Drive in East Peoria, Illinois, which is in Tazewell County. Detective Gillson observed defendant complete the registration form required by the Act, which the circuit court admitted as State's exhibit No. 1. The address defendant listed on the form was 315 Oakbrook Drive in East Peoria. A box was checked on the form indicating defendant was a sex offender. Detective Gillson watched defendant sign the form, in which defendant admitted he was a sex offender. On the back of the form was a list of requirements, which the sex offender had to read and initial. Detective Gillson observed defendant initial each paragraph, including the one that informed defendant he had to report his new address within three days of changing his address to both the agency where he was currently registered and the agency for the new address. Defendant also signed the back of the form, and Detective Gillson also signed the form. Once defendant moved out of the county, Detective Gillson did not complete regular checks on defendant.

¶ 9 Additionally, Detective Gillson testified he received information defendant was not living at the address on his registration in late April or early May 2018. Defendant's sister had reported defendant had been staying at 606 Santa Fe Trail for at least a month. Detective Gillson also spoke with Jesse and Joyce. Detective Gillson attempted to speak with defendant,

but defendant could not respond because his speech was very slurred. Detective Gillson testified defendant had a very strong odor of alcohol coming from him. According to Detective Gillson, defendant had not changed his address and should still be living in East Peoria.

¶ 10　　　　Joyce testified she lived at 606 Santa Fe Trail in Metamora with her daughter, Stacey, and a grandson. In March 2018, defendant came to her home to help her out with yardwork. He would spend a couple of nights and then return to his girlfriend's house. Defendant had some of his belongings at her home, including clothes, medication, and toiletries. She thought he spent 60 to 75% of his time at her home. Joyce testified defendant could have spent at least five nights in a row at her home.

¶ 11　　　　Stacey testified defendant came to live at Joyce's home at the end of March 2018. He just showed up one day, spent the night, and just stayed. Defendant had personal items at the home and ate meals there. His girlfriend would come visit him there. According to Stacey, defendant was at Joyce's home "pretty constantly" from the end of March 2018 until his arrest on May 2, 2018. Stacey also lived at the home during that time, except for the last two weeks in April 2018 when she stayed with a friend. She did admit defendant left Joyce's home from time to time. Joyce told her defendant did not come home only a couple of times since he had been staying at Joyce's home.

¶ 12　　　　Jesse testified he was at 606 Santa Fe Trail every Monday through Friday from 7 a.m. to between 3pm and 5pm from March to May 2018 building a retaining wall. Defendant was at the home when Jesse arrived and was still there when he left. Defendant's truck would normally be in the same spot.

¶ 13　　　　Defendant testified he lived with his girlfriend in East Peoria. He received his mail at his girlfriend's home, and her address was listed on his driver's license. Defendant also

stated he kept his clothes at his girlfriend's home. Defendant admitted he spent some nights at his mother's home, but it was just off and on. He only had two sets of clothes at his mother's home. Defendant further testified he spent between 10 to 15 nights at his mother's home in April 2018. However, he only spent two consecutive nights at the home. Defendant wanted to spend time with his mother before he was incarcerated on charges in Tazewell County. Defendant acknowledged his girlfriend had an order of protection against him from March 12 to March 28, 2018. He testified she was not at her home during that time, so he continued to live there.

¶ 14        Morrissey testified she and defendant had lived together for four years. After she got the order of protection against defendant, she went out of town for a few days. When she returned, defendant did not stay at her home for four or five days. In April 2018, defendant spent "a few" nights at her home.

¶ 15        At the conclusion of the trial, the jury found defendant guilty. Defendant did not file a posttrial motion. On August 24, 2018, the circuit court held defendant's sentencing hearing. The State's only evidence was the presentence investigation report. Defendant made a statement of allocution and presented the following: (1) a letter from Morrissey, (2) a letter from Joyce, (3) a certificate of completion for "Seeking Substance Abuse Treatment," and (4) a certificate of completion for "A Guide Through the 12 Steps of Recovery."

¶ 16        In sentencing defendant, the circuit court first addressed the factors in mitigation and found the following:

> "[T]he defendant's criminal conduct did not cause nor threaten serious physical
> harm to another. Defendant did not contemplate that his criminal conduct would
> cause or threaten serious physical harm to another.
>
>        The court specifically rejects, and it wasn't argued so I'm not—but for the

record factor (12), the imprisonment—and this is on mitigation—the imprisonment of the defendant would endanger his or her medical condition, that's been raised. The defendant has cirrhosis of the liver and yet he's consuming tons of alcohol. I mean, that's been made clear to the court. And that's incredibly terrible for his health with suffering from cirrhosis of the liver. And by being incarcerated he shouldn't be able to have access to alcohol and, therefore, it may, in fact, help him from a health standpoint."

Regarding aggravating factors, the court found defendant's history of prior criminal activity was a "very serious and significant factor." The court sentenced defendant to a prison term of seven years to run consecutive to his sentences in Tazewell County case Nos. 17-CF-184 and 14-CF-303.

¶ 17       On August 29, 2018, defendant filed a *pro se* motion to reconsider his sentence. Defense counsel later filed an amended motion to reconsider defendant's sentence, which first asserted the circuit court failed to follow section 11, article I, of the Constitution of Illinois of 1970 (Ill. Const. 1970, art. I, sec. 11), which provides "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Next, defendant argued the sentence imposed was not in keeping with the following: (1) defendant's criminal conduct did not cause or threaten serious physical harm to another, (2) defendant did not contemplate his criminal conduct would cause or threaten serious physical harm to another, (3) defendant is already serving a 12-year prison term to which this sentence ran consecutive, (4) defendant's mother was elderly and needed defendant to care for her, and (5) defendant had poor physical health including cirrhosis of the liver. Last, defendant argued his sentence was unfair, unduly harsh, and excessive given his criminal history,

mitigating factors, and the circumstances of this case. After an October 29, 2018, hearing, the court denied defendant's amended motion to reconsider.

¶ 18        On October 30, 2018, defendant filed a timely notice of appeal that listed the judgment date as August 24, 2018. On November 19, 2018, defendant filed a timely amended notice of appeal in sufficient compliance with Illinois Supreme Court Rule 606 (eff. July 1, 2017), which listed the judgment date as October 29, 2018. Ill. S. Ct. R. 303(b)(5) (eff. July 1, 2017). Accordingly, this court has jurisdiction of defendant's appeal under Rule 603 (eff. Feb. 6, 2013).

¶ 19                                    II. ANALYSIS

¶ 20                              A. Motion to Continue

¶ 21        Defendant first argues the circuit court erred by denying his motion to continue his trial to hire private counsel. Defendant recognizes he did not preserve this issue for review and asserts we should review the issue under the plain-error doctrine (Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967)). The State contends the court did not err.

¶ 22        The plain-error doctrine permits a reviewing court to consider unpreserved error under the following two scenarios:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189, 940 N.E.2d 1045, 1058 (2010).

¶ 23     We begin a plain-error analysis by first determining whether any error occurred at all. *Sargent*, 239 Ill. 2d at 189, 940 N.E.2d at 1059. If error did occur, this court then considers whether either of the two prongs of the plain-error doctrine has been satisfied. *Sargent*, 239 Ill. 2d at 189-90, 940 N.E.2d at 1059. Under both prongs, the defendant bears the burden of persuasion. *Sargent*, 239 Ill. 2d at 190, 940 N.E.2d at 1059. Here, defendant contends his claim is cognizable under the second prong.

¶ 24     The sixth amendment guarantees a criminal defendant the right to assistance of counsel (U.S. Const., amend. VI), which includes the right to effective assistance of counsel and the right to select and be represented by one's preferred attorney. *People v. Rivera*, 2013 IL 112467, ¶ 37, 986 N.E.2d 634. However, "[t]he right to counsel of choice is not absolute and is circumscribed in several respects ***." *Rivera*, 2013 IL 112467, ¶ 37. One such respect is "where the exercise of that claimed right would delay or impede the effective administration of justice." *People v. Barrow*, 133 Ill. 2d 226, 252, 549 N.E.2d 240, 251 (1989). " '[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " *Rivera*, 2013 IL 112467, ¶ 37 (quoting *Wheat v. United States*, 486 U.S. 153, 159 (1988)). The court must balance the defendant's right to choose his or her counsel against the need for efficient and effective administration of justice. *People v. Curry*, 2013 IL App (4th) 120724, ¶ 48, 990 N.E.2d 1269.

¶ 25     The determination of whether to grant or deny a continuance for substitution of counsel rests within the circuit court's discretion and will not be overturned absent an abuse of that discretion. *People v. Segoviano*, 189 Ill. 2d 228, 245, 725 N.E.2d 1275, 1283 (2000). A

circuit "court abuses its discretion when its ruling is arbitrary 'or when no reasonable person would take the view adopted by the trial court.' " *People v. Pope*, 2020 IL App (4th) 180773, ¶ 28 (quoting *People v. Bates*, 2018 IL App (4th) 160255, ¶ 60, 112 N.E.3d 657). In evaluating the circuit court's exercise of its discretion, the reviewing court considers several factors including (1) the movant's diligence; (2) the defendant's right to a speedy, fair and impartial trial; and (3) the interests of justice. *Segoviano*, 189 Ill. 2d at 245, 725 N.E.2d at 1283. However, it is well-established a circuit court "will not be found to have abused its discretion in denying a motion for substitution of counsel in the absence of ready and willing substitute counsel." *Segoviano*, 189 Ill. 2d at 245, 725 N.E.2d at 1283. This court has further recognized a circuit court does not abuse its discretion by denying a motion to continue to allow for substitution of counsel " 'where new counsel is unidentified or does not stand ready, willing, and able to make an unconditional entry of appearance on defendant's behalf.' " *Curry*, 2013 IL App (4th) 120724, ¶ 49 (quoting *People v. Childress*, 276 Ill. App. 3d 402, 411, 657 N.E.2d 1180, 1186 (1995)).

¶ 26        Defendant cites several cases in support of his argument where the reviewing court reversed the circuit court's denial of the motion to continue to substitute counsel because the circuit court completely failed to make any kind of inquiry into the defendant's request to continue. See *People v. Adams*, 2016 IL App (1st) 141135, ¶ 16, 50 N.E.3d 738 (noting the circuit court utterly failed to make any kind of inquiry into the defendant's request); *People v. Basler*, 304 Ill. App. 3d 230, 233, 710 N.E.2d 431, 433 (1999), *aff'd as modified*, 193 Ill. 2d 545, 740 N.E.2d 1 (2000) (finding the circuit court abused its discretion because it rejected "the defendant's motion for continuance without inquiring further about her circumstances *or* finding that she presented the motion merely to delay her trial" (Emphasis added.)). In this case, the

circuit court did conduct an inquiry into defendant's request to continue his trial to hire counsel. Thus, we find those cases distinguishable.

¶ 27            Moreover, defendant cites *People v. Bingham*, 364 Ill. App. 3d 642, 644, 847 N.E.2d 903, 906 (2006), where this court reversed the circuit court's judgment because the circuit court violated the defendant's right to choice of counsel by erroneously denying the defendant's motion for continuance without conducting an adequate inquiry into the defendant's request. When the defendant's case was called for trial, the defense counsel made a motion to continue to obtain new counsel and explained defendant sought to be represented by out-of-town counsel, who was representing the defendant in other pending matters. *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906. The prosecutor stated he had received a message from the out-of-town counsel the day before and noted the State was " 'most anxious to proceed in this matter.' " *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906. Without any further inquiry, the circuit court denied the motion to continue. *Bingham*, 364 Ill. App. 3d at 644, 847 N.E.2d at 906. In reversing the circuit court's denial of the motion to reconsider, this court noted the following: (1) the out-of-town attorney the defendant sought to be represented by contacted the prosecutor the previous day, (2) the case progressed quickly and had been pending only three months, (3) the defendant had not filed any prior continuances or made any pretrial motions, and (4) the record did not indicate the defendant made any prior attempts to delay the proceedings or the purpose of the defendant' s request was dilatory. *Bingham*, 364 Ill. App. 3d at 645, 847 N.E.2d at 907.

¶ 28            This court later emphasized our decision in *Bingham* focused on the circuit court's failure to conduct an inquiry into the circumstances and purposes of the defendant's motion. *Curry*, 2013 IL App (4th) 120724, ¶ 51. " '*Bingham* should be understood as

concluding, *under the particular circumstances of that case*, that an inquiry by the trial court might well have disclosed that the attorney the defendant identified by name (whose involvement in the case the prosecutor corroborated) would, in fact, be "ready and willing" substitute counsel.' " (Emphasis in original.) *Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *People v. Montgomery*, 373 Ill. App. 3d 1104, 1111, 872 N.E.2d 403, 410 (2007), *abrogated on other grounds by People v. Ayres*, 2017 IL 120071, 88 N.E.3d 732). However, our decision in *Bingham* did not modify the long-standing rule a circuit "court does not abuse its discretion by denying a defendant's motion for continuance where new counsel does not stand 'ready, willing and able to make an unconditional entry of appearance instanter.' " *Curry*, 2013 IL App (4th) 120724, ¶ 51 (quoting *People v. Koss*, 52 Ill. App. 3d 605, 607-08, 367 N.E.2d 1040, 1041 (1977)). Thus, where a circuit court conducts an inquiry into the circumstances of the defendant's motion, and "those circumstances demonstrate substitute counsel does not stand 'ready, willing, and able to make an unconditional entry of appearance' on defendant's behalf, a court does not abuse its discretion by denying a defendant's motion for continuance to obtain substitute counsel." *Curry*, 2013 IL App (4th) 120724, ¶ 51.

¶ 29    In *Curry*, we found *Bingham* distinguishable because the circuit court correctly inquired of counsel to determine the factual basis surrounding the request for a continuance, which revealed the defendant had paid the substitute counsel a retainer, the substitute counsel had contacted the prosecutor, and the substitute counsel indicated he would not enter an appearance unless the case was continued. *Curry*, 2013 IL App (4th) 120724, ¶¶ 51-52. We concluded the circuit court did not abuse its discretion by denying the defendant's motion for a continuance because the substitute counsel was not willing to make an unconditional entry of appearance on the defendant's behalf. *Curry*, 2013 IL App (4th) 120724, ¶ 52.

- 11 -

¶ 30　　　　　We continue to follow *Curry*. In this case, the circuit court made an inquiry into defendant's motion for continuance. Defendant was still undecided on who to hire, and thus substitute counsel was unidentified. As such, defendant also did not have a substitute counsel " 'ready, willing, and able to make an unconditional entry of appearance.' " *Curry*, 2013 IL App (4th) 120724, ¶ 51.

¶ 31　　　　　Additionally, we find this case is distinguishable from *People v. Tucker*, 382 Ill. App. 3d 916, 923-24, 889 N.E.2d 733, 739-40 (2008), where the reviewing court found reversible error where the circuit court failed to inquire more thoroughly into the defendant's request. There, the defendant claimed someone else hired a private attorney to represent him and identified the private attorney by name. *Tucker*, 382 Ill. App. 3d at 922, 889 N.E.2d at 738. The private attorney had not filed an appearance, and the circuit court did not attempt to verify the employment of the private attorney or ask the defendant why he wanted another attorney. *Tucker*, 382 Ill. App. 3d at 922-23, 889 N.E.2d at 738-39. Here, defendant was acting on his own and the court's inquiry was sufficient to reveal defendant did not have substitute counsel " 'ready, willing, and able to make an unconditional entry of appearance.' " *Curry*, 2013 IL App (4th) 120724, ¶ 51.

¶ 32　　　　　Thus, the circuit court did not abuse its discretion by denying defendant's motion to continue for the substitution of counsel. Since we have found no error, we do not address defendant's assertion of plain error.

¶ 33　　　　　　　　　　　　　　B. Sentencing

¶ 34　　　　　Defendant also contends he is entitled to a new sentencing hearing because the circuit court improperly found defendant's cirrhosis of the liver supported a longer sentence because incarceration would deny defendant access to alcohol. The State contends the circuit

court's sentence was not an abuse of discretion and defendant relies on improper materials in making his argument.

¶ 35        Defendant essentially contends the circuit court imposed an excessive sentence. See *People v. Johnson*, 2019 IL 122956, ¶ 39, 129 N.E.3d 1239 (noting the defendant raised an excessive sentencing argument when the defendant argued he would have received a lower sentence if the court had not erred in its application of the statute and, thus, erroneously considered statutory factors). This court has explained appellate review of a defendant's excessive sentence claim as follows:

>            "A trial court's sentencing determination must be based on the particular circumstances of each case, including factors such as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Generally, the trial court is in a better position than a court of review to determine an appropriate sentence based upon the particular facts and circumstances of each individual case. [Citation.] Thus, the trial court is the proper forum for the determination of a defendant's sentence, and the trial court's decisions in regard to sentencing are entitled to great deference and weight. [Citation.] Absent an abuse of discretion by the trial court, a sentence may not be altered upon review. [Citation.] If the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense." (Internal quotation marks omitted.) *People v. Price*, 2011 IL App (4th) 100311, ¶ 36, 958 N.E.2d 341 (quoting *People v. Hensley*, 354 Ill. App. 3d 224, 234-35, 819 N.E.2d 1274, 1284 (2004)); see also *People v. Alexander*, 239 Ill. 2d

205, 212-13, 940 N.E.2d 1062, 1066 (2010).

Based on his prior convictions, defendant was subject to Class X sentencing (730 ILCS 5/5-4.5-95(b) (West Supp. 2017)), which carries a sentencing range of 6 to 30 years in prison (730 ILCS 5/5-4.5-25(a) (West 2018) (text of section effective until June 1, 2019)). Thus, defendant's seven-year prison term is within the sentencing range. When a defendant's sentence falls within the statutory sentencing range, this court will not disturb the sentence unless its imposition constitutes an abuse of discretion. *People v. Solis*, 2019 IL App (4th) 170084, ¶ 23, 138 N.E.3d 247.

¶ 36       We need not even address the propriety of the information defendant cites in support of his argument because the circuit court made the statements challenged by defendant in finding the statutory mitigating factor of incarceration endangering the defendant's medical condition (730 ILCS 5/5-5-3.1(12) (West Supp. 2017) (text of section effective until of June 1, 2018)) did not apply in this case. Contrary to defendant's assertion, the court did not find defendant's cirrhosis of the liver was a reason for a longer prison sentence. The court's statements in sentencing clearly indicate defendant did not receive the minimum six years' imprisonment based on his extensive criminal history, which the court expressly stated was a "very significant and serious factor" in sentencing defendant. Accordingly, we do not find defendant's seven-year sentence was excessive. As such, the circuit court did not abuse its discretion.

¶ 37                              III. CONCLUSION

¶ 38       For the reasons stated, we affirm the Woodford County circuit court's judgment.

¶ 39       Affirmed.