# Illinois Official Reports

## Appellate Court

---

### *People v. Koen*, 2014 IL App (1st) 113082

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES KOEN, Defendant-Appellant. |
| District & No. | First District, Sixth Division<br>Docket No. 1-11-3082 |
| Rule 23 Order filed<br>Rule 23 Order<br>withdrawn<br>Opinion filed | September 30, 2013<br><br>February 5, 2014<br>February 7, 2014 |

| | |
|---|---|
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for forgery and theft arising from defendant's activities in taking control of a building formerly operated by a not-for-profit organization, his convictions and sentence were upheld, since he violated the General Not For Profit Corporation Act of 1986, the trial court did not abuse its discretion in disqualifying his son from acting as his attorney, defendant forfeited any claims that the assistant bureau chief of the Charitable Trust Bureau of the Attorney General's Office was improperly allowed to testify about the Act and that no instructions were given on the law governing reinstatement of nonprofit corporations under the Act, his counsel was not ineffective in failing to tender such instructions, defendant invited the prosecution's closing argument that the State was the victim of defendant's offense, and the mittimus was corrected to allow credit for defendant's presentence incarceration for only the charges for which he was being sentenced. |

| | |
|---|---|
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-18230 (01); the Hon. Neera Lall Walsh, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed; mittimus corrected. |
| Counsel on<br>Appeal | Michael J. Pelletier, Alan D. Goldberg, and Lauren A. Bauser, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Michael M. Glick and Eldad Z. Malamuth, Assistant Attorneys General, of counsel), for the People. |
| Panel | JUSTICE REYES delivered the judgment of the court, with opinion. Presiding Justice Rochford and Justice Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1    Following a jury trial, defendant Charles Koen (Koen) appeals his convictions of theft (720 ILCS 5/16-1(a)(1) (West 2004)) and forgery (720 ILCS 5/17-3(a)(1) (West 2004)). On appeal, Koen argues (1) his actions were lawful under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 2004)); (2) the trial court abused its discretion in disqualifying Charles Koen Jr., as his counsel; (3) the testimony of Barry Goldberg violated his right to a fair trial; (4) the trial court's jury instructions violated his right to a fair trial; (5) statements made during the State's closing argument violated his right to a fair trial; and (6) the mittimus must be corrected to reflect the proper offense and time spent in custody. For the following reasons, we affirm Koen's convictions and correct the mittimus.

¶ 2                                    BACKGROUND
¶ 3                              I. Facts of the Offense
¶ 4    The United Way is a nationwide nonprofit charitable organization with local offices throughout Illinois. In 2003, United Way had 52 local offices in the suburban areas of Cook, Du Page, McHenry, Kane, and Will Counties. In an effort to improve efficiency, United Way sought to consolidate these 52 offices into 13 offices. United Way, however, decided not to merge the United Way of Harvey (UW-Harvey) into the 13 newly consolidated offices because of tax liabilities on the building at 195 East 154th Street in Harvey, Illinois, where UW-Harvey operated. As a result, UW-Harvey ceased submitting its required filings with the Illinois Secretary of State and was administratively dissolved in January 2004.

¶ 5        On August 30, 2004, eight months after the dissolution of UW-Harvey, Koen called the United Way of Metropolitan Chicago (UW-Chicago). During the conversation, Koen communicated that his organization, United Front, Inc., wanted to purchase the property at 195 East 154th Street. UW-Chicago informed Koen it did not own the property and advised him of the tax liabilities associated with the building. UW-Chicago then instructed Koen to contact the attorney for UW-Harvey if United Front still intended to acquire the property.

¶ 6        Koen never contacted the attorney for UW-Harvey. Instead, on September 1, 2004, Koen and codefendant Alex Brooks (Brooks) filed an application with the Illinois Secretary of State to reinstate UW-Harvey. These documents indicated Koen and Brooks to be the registered agent and treasurer, respectively, of UW-Harvey, although neither had any association with the organization. The following day, Koen and Brooks signed and recorded a notarized quitclaim deed for the property at 195 East 154th Street, conveying the building to United Front. Koen then called UW-Chicago again and advised the organization that United Front had purchased the property and resolved the liability issue.

¶ 7        On September 3, 2004, Charles Koen, Jr., Koen's son and United Front's attorney, forwarded letters to tenants of the building at 195 East 154th Street. The letters advised the tenants United Front owned and managed the building "in conjunction with the United Way of Harvey" and offered to "to meet with [the tenants] to discuss leasing arrangements." The letters further declared while "there may have been some misunderstanding as to who owned the building, *** rent payments should resume immediately."

¶ 8        Around this time, UW-Chicago began receiving phone calls from tenants of the building expressing concern over the attempts to have rent payments submitted to United Front. UW-Chicago also received a letter from Koen dated September 9, 2004 stating that United Front was now the lawful owner of the property and had resolved the associated tax liabilities. Accordingly, UW-Chicago consulted with its attorneys regarding the issue and was advised that United Front was not the lawful owner of the property. UW-Chicago thus wrote a letter to Koen Jr. advising him of the same. Koen Jr. responded to the letter, asserting United Front was in fact the lawful owner of the building, a contention with which UW-Chicago disagreed.

¶ 9        Despite this disagreement, United Front continued to proceed as the lawful owner of the property. It attempted to raise the rate of rent for certain tenants in the building. It collected rent payments from those tenants who paid and threatened eviction for those tenants who did not comply. Koen further attempted to change various locks in the building and, in some instances, succeeded in doing so without notifying the affected tenants. On multiple occasions, members of United Front presented the quitclaim deed to tenants of the building in an effort to assert ownership and a right to future rent payments. In these instances, Harvey police officers had to escort the United Front members from the property after the tenants complained.

¶ 10       Ultimately, the Charitable Trust Bureau (CTB) of the Illinois Attorney General's office conducted an investigation into the matter and filed a civil suit in the circuit court of Cook County. The civil suit asserted the reinstatement of UW-Harvey was conducted without

authority. Following the commencement of the civil suit, Koen was arrested in October 2007 and criminally charged with two counts of theft and two counts of forgery.

¶ 11                                    II. Motion for Disqualification

¶ 12    Prior to trial, Koen Jr. sought to appear on behalf of his father as defense counsel. In response, the State moved to disqualify Koen Jr., arguing he should be disqualified as a potential witness given his role as "a participant in the actual takeover of the property." As the State noted, Koen Jr. communicated and met with tenants from whom the defendants allegedly requested rent payments. Koen Jr. admitted to his contact with the tenants, but responded that "[the State] could bring in those tenants to testify" regarding their communications, and thus he was not a "necessary witness" in the case. The trial court ruled in the State's favor and disqualified Koen Jr. The trial court reasoned, "possibly anything that the tenants said that [Koen Jr.] said would be hearsay, so the State may find it necessary to call [Koen Jr.] as a witness."

¶ 13                                    III. Testimony of Barry Goldberg

¶ 14    At trial, the State presented the testimony of Barry Goldberg, assistant bureau chief of the CTB. Goldberg began by testifying about the general role of the Attorney General's office in protecting charitable funds and organizations. Goldberg then explained in more detail the registration and filing requirements of charities, as well as the investigatory functions of the CTB. In particular, he noted charitable corporations in Illinois must file an annual report with the Illinois Secretary of State, which "lists the current officers and directors of the organization." Goldberg further added, "[t]he last board of directors is the only body that's authorized to wind down the affairs of the organization." Therefore, "[i]f the last board of directors are not available or cannot for whatever reason wind down the affairs of the not-for-profit corporation, then a court action has to be filed to seek court authorization to take control of and distribute the assets in an appropriate fashion."

¶ 15    Goldberg additionally testified to his role in the investigation. According to Goldberg, after the CTB became aware of the issue with UW-Harvey and United Front, he compared the reinstatement filing to the most recent annual reports filed by UW-Harvey before its dissolution. The reinstatement filing, he noted, was "unusual" because it listed Koen and Brooks as board members, and their names were "not the same names as those that were listed with the Secretary of State and with the Attorney General's Office as the last authorized board of [UW-Harvey]." In response to this discrepancy, the CTB "filed a lawsuit in the Circuit Court of Cook County to appoint a receiver for both [UW-Harvey] and the United Front and to declare that the reinstatement of [UW-Harvey] was done without authority."

¶ 16    While defense counsel filed a motion *in limine* before trial to prevent Goldberg from disclosing Koen's prior felony convictions, defense counsel did not object to any of the content of the Goldberg's testimony.[1]

¶ 17                            IV. Closing Arguments

¶ 18    During closing arguments, defense counsel argued Koen and Brooks believed "the process that they used *** to obtain the quitclaim deed was valid." In particular, defense counsel likened Koen's asserting control over the property to reclaiming a discarded washing machine from an alley; counsel asked the jury, "If a person purchases a new washer or for whatever reason gets rid of the old washer and leaves it in the alley, can they charge the junkman with theft for picking up something that they abandoned?" Further, defense counsel argued it was unclear whether UW-Harvey owned the building after its dissolution in 2004.

¶ 19    In rebuttal, the State responded to Koen's arguments regarding the ownership of the building:

> "The victim is [UW-Harvey]. Actually, as Barry Goldberg was here to say the victim [*sic*] are the People of the State of Illinois and that's who's bringing the charges.
>
> When you take advantage of a charitable organization–
>
> MR. THEDFORD [defense counsel]: Objection, Your Honor.
>
> THE COURT: Counsel may argue.
>
> If a lawyer makes a statement that's not based on the evidence, you should disregard that statement."

¶ 20    After the jurors exited the courtroom to deliberate, Koen moved for a mistrial. Defense counsel argued that describing the State as the "victim" in the case was "misleading." The State disagreed, asserting Goldberg's testimony established "the People of the State of Illinois *** have the interest in charitable entities" and, thus, by "saying that there's no victim," Koen "invited" the characterization. The trial court denied the motion, agreeing with the State that "it was invited comment at that point."

¶ 21                            V. Jury Instructions

¶ 22    The trial court instructed the jury as to Koen's presumption of innocence, the State's burden of proof, and the elements of the offenses charged. With regard to the first count, the trial court advised the jury it would need to find UW-Harvey was the owner of the property to sustain a conviction for theft. It further instructed the jury that it must find Koen exerted unauthorized control over that property. The trial court did not instruct the jury as to provisions of the General Not For Profit Corporation Act relating to the reinstatement of a

---

[1]Defense counsel objected twice during the State's examination of Goldberg. The first objection, for leading the witness, was sustained. The second objection was withdrawn.

dissolved nonprofit corporation. After deliberating, the jury proceeded to find Koen guilty on one count of theft and one count of forgery, counts I and IV respectively. The jury acquitted Koen of the remaining counts.

¶ 23                             VI. Sentencing and Credit for Time Served

¶ 24    Following the jury trial, the trial court held a sentencing hearing on August 25, 2011. At the hearing, the trial court sentenced Koen to 12 years of imprisonment in the Illinois Department of Corrections. The trial court also found Koen was entitled to 83 days[2] of credit for time served awaiting trial. The trial court then stayed the issuance of the mittimus for further proceedings.

¶ 25    At a later hearing held on September 1, 2011, Koen moved the court to reconsider the sentence. Koen contended he should have been given credit for an additional 293 days served; after Koen posted bond and was released pending trial in this case, he was arrested on separate charges (postbond charges) for which he remained in custody another 11 months until he was able to meet the additional bond. The trial court denied Koen's motion, stating "there is no reason [Koen] should be given credit for time on other matters, and those matters having not been resolved yet on this matter, which is separate and distinct from those matters." The trial court again stayed the issuance of the mittimus.

¶ 26    On September 19, 2011, Koen pleaded guilty to the postbond charges. At the plea hearing, the trial court stated, "I will give [Koen] credit for the time he served on the other cases." Later in the hearing, defense counsel sought clarification of the credit Koen would be receiving for time served. The trial court responded:

        "As to that case, it was 83 on August 25 plus additional time to today's date which is additional 20 something days. That's when I issued that mitt I said it's nunc pro tunc to that day. It's still calculated automatically as far as time. If there is an issue about this, I am happy to clear that up. As to these cases, it's 293 additional days. *** It will be mitt as to all the cases."

The mittimus was then entered on September 20, 2011 and provided that Koen was to receive credit for 83 days served. The mittimus does not account for any additional time Koen served prior to trial on the postbond charges or after the conclusion of the sentencing hearing.

¶ 27                                         ANALYSIS
¶ 28                                  I. Statutory Interpretation
¶ 29    Koen first argues the State failed to prove him guilty beyond a reasonable doubt of theft. "A person commits theft when he [or she] knowingly [o]btains or exerts unauthorized control

_____

[2]The trial court calculated this number to reflect the time Koen spent in custody awaiting bail and between the conclusion of the trial and the sentencing hearing. In his brief, Koen admits the trial court miscalculated this number. The correct number is 78. Koen served eight days between the time he was arrested on October 3, 2007 and released on October 10, 2007. Koen also served 70 days between the time he was convicted on June 17, 2011 and was sentenced on August 25, 2011.

over property of the owner." 720 ILCS 5/16-1(a)(1) (West 2004). Koen admits "there was no question [he] exerted control over the Harvey building by transferring title of the property to the United Front." Koen thus asserts the State failed to prove his actions in doing so were "unauthorized" because, according to Koen, Illinois law permitted him to reinstate UW-Harvey.

¶ 30 While Koen frames his argument in terms of reasonable doubt, Koen's argument is actually one of statutory interpretation. In matters of statutory interpretation our standard of review is *de novo*. *People v. Swift*, 202 Ill. 2d 378, 385 (2002). The primary goal of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Marshall*, 242 Ill. 2d 285, 292 (2011). We construe the statute as a whole and afford the language its plain and ordinary meaning. *Id.* We must also avoid rendering any part meaningless or superfluous, and consider words and phrases in light of other relevant provisions of the statute. *Id.* Additionally, we may consider the consequences of construing the language one way as opposed to another and, in doing so, we presume the legislature did not intend the statute to have absurd, inconvenient, or unjust consequences. *Id.* at 293.

¶ 31 Specifically, Koen argues his actions were authorized as a matter of Illinois law under section 112.45 of the General Not For Profit Corporation Act of 1986 (Act) (805 ILCS 105/112.45 (West 2004)). Section 112.45(d) provides:

> "Upon the filing of the application for reinstatement, the corporate existence shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved; and all acts and proceedings of its officers, directors and members, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed." 805 ILCS 105/112.45(d) (West 2004).

According to Koen, while he and Brooks may not actually have been officers, directors, or members of UW-Harvey, their actions were still authorized under the Act because they "were 'purporting to act' on behalf of the defunct [UW-Harvey] by filing articles of reinstatement in the manner specified by that section." This result, argues Koen, is mandated from the plain language of section 112.45. Koen's statutory interpretation is flawed, however, for three reasons.

¶ 32 First, it relies on a misinterpretation of section 112.45(d). Koen reads the phrase "acting or purporting to act as such" as authorizing any person to reinstate the dissolved nonprofit corporation so long as this person "purports" to be an officer, director, or member of said entity. Relying on rules of statutory interpretation, Koen insists "[t]his phrase cannot be ignored." While we may not ignore this phrase, neither can we ignore the context in which this phrase appears. The phrase plainly modifies "officers, directors and members" in the text of the statute. Accordingly, section 112.45(d) does not suggest anybody may validly take actions on behalf of the nonprofit, but explicitly outlines only "officers, directors and members" may do so. Moreover, contrary to Koen's assertion, section 112.45(d) does not contemplate *who* may file the application for reinstatement. Rather, section 112.45(d) describes *the effect* of the filing for reinstatement. See 805 ILCS 105/112.45(d) (West 2004)

("Upon the filing of the application for reinstatement, the corporate existence shall be deemed to have continued without interruption from the date of the issuance of the certificate of dissolution, and the corporation shall stand revived with such powers, duties and obligations as if it had not been dissolved ***."); see also *New Holy Temple Missionary Baptist Church v. Discount Inn, Inc.*, 371 Ill. App. 3d 443, 446 (2007). Thus, when section 112.45(d) goes on to state "all acts and proceedings of its officers, directors and members, acting or purporting to act as such, which would have been legal and valid but for such dissolution, shall stand ratified and confirmed," it is similarly discussing the effect of reinstatement. That is, section 112.45(d) recognizes the actions taken by the nonprofit's "officers, directors and members" during the time between dissolution and reinstatement as valid actions of the nonprofit corporation "as if it had not been dissolved." 805 ILCS 105/112.45(d) (West 2004).

¶ 33　　Second, Koen's interpretation fails because it does not account for other provisions of the Act. In particular, section 112.45(b) requires the application for reinstatement to be "executed and filed in duplicate in accordance with Section 101.10 of this Act." 805 ILCS 105/112.45(b) (West 2004). Section 101.10 authorizes the individuals who may sign these documents and provides that these documents shall be signed "[b]y the president, a vice-president, the secretary, an assistant secretary, the treasurer, or other officer duly authorized by the board of directors of the corporation to execute the document." 805 ILCS 105/101.10(b)(2)(i) (West 2004). Section 101.10 also provides, "[i]f it shall appear from the document that there are no such officers, then [the documents shall be signed] by a majority of the directors or by such directors as may be designated by the board." 805 ILCS 105/101.10(b)(2)(ii) (West 2004). Further, "[i]f it shall appear from the document that there are no such officers or directors, then [the documents shall be signed] by the members, or such of them as may be designated by the members at a lawful meeting." 805 ILCS 105/101.10(b)(2)(iii) (West 2004). Finally, "[i]f the corporate assets are in the possession of a receiver, trustee or other court-appointed officer, then [the documents shall be signed] by the fiduciary or the majority of them if there are more than one." 805 ILCS 105/101.10(b)(2)(iv) (West 2004). Nowhere does section 101.10 authorize any person to "purport to act" as an officer of the dissolved entity to sign the documents of reinstatement. To the contrary, the section specifically lists who is authorized to sign the documents and Koen does not fall within any of these classes of individuals.

¶ 34　　Lastly, we find Koen's interpretation incorrect on the grounds it would lead to "unjust" results. See *Marshall*, 242 Ill. 2d at 293. Under Koen's interpretation, the Act permits any individual to falsely claim an association with an organization, validly act on its behalf postdissolution, and file an application for reinstatement. We cannot assume our legislature intended such an outcome and, consequently, do not agree Koen's actions were authorized under the Act.

¶ 35　　　　　　　　　　　　II. Disqualification of Koen Jr.

¶ 36　　Koen additionally asserts the trial court abused its discretion when it disqualified Koen's son, Charles Koen, Jr., as his attorney. According to Koen, the trial court's decision was a

denial of his right under the sixth amendment to be represented by the counsel of his choice. Koen asks us to reverse his conviction on these grounds and remand the matter for a new trial.

¶ 37    As a threshold matter, we note Koen forfeited this issue by failing to raise it in his posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988); *People v. Reed*, 298 Ill. App. 3d 285, 294 (1998). Koen, therefore, argues for plain-error review. We need not address his plain-error arguments, however, because even addressing the issue on its merits, we find no abuse of discretion.

¶ 38    Generally, "[t]he sixth amendment of the United States Constitution guarantees a criminal defendant the right to the assistance of the counsel of his choice." *People v. Ortega*, 209 Ill. 2d 354, 358 (2004) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). The " 'essential aim' " of the sixth amendment, however, " 'is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.' " *People v. Rivera*, 2013 IL 112467, ¶ 37 (quoting *Wheat*, 486 U.S. at 159). The right to the counsel of one's choice, therefore, "is not absolute and is circumscribed in several respects." *Id.*

¶ 39    Relevant to this case, "[t]he advocate-witness rule precludes an attorney from acting as advocate and witness in the same case." *People v. Gully*, 243 Ill. App. 3d 853, 859 (1993). This rule "reflects important policy considerations." *Rivera*, 2013 IL 112467, ¶ 40. Indeed, there is an inherent conflict of interest in an advocate-witness; "the function of an advocate is to advance or argue the cause of another, while that of the witness is to state the facts objectively." *Gully*, 243 Ill. App. 3d at 859. Furthermore, "the attorney-witness may not be a fully objective witness, causing harm to the client's cause, or the trier of fact may grant undue weight to the attorney's testimony, unfairly disadvantaging the opposing party." *Rivera*, 2013 IL 112467, ¶ 40. Thus, the trial court is afforded " 'substantial latitude' to refuse to allow a defendant to waive his chosen counsel's actual or potential conflict of interest." *Ortega*, 209 Ill. 2d at 358-59 (quoting *Wheat*, 486 U.S. at 163). Trial courts require this latitude because the " 'likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.' " *Id.* at 359 (quoting *Wheat*, 486 U.S. at 162-63). Accordingly, a reviewing court will not set aside a trial court's decision to disqualify a defendant's chosen counsel unless there has been a clear abuse of discretion. *Id.* The trial court abuses its discretion when its decision is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it. *Id.* With these principles in mind, we do not find the trial court abused its discretion in disqualifying Koen Jr.

¶ 40    Koen contends the State did not meet its burden in demonstrating Koen Jr.'s testimony was necessary to its case. Koen supports his assertion with the fact that the State ultimately did not call Koen Jr. as a witness at trial. Regardless, the fact that an attorney does not actually testify at trial is "irrelevant to the trial court's decision to disqualify" said attorney beforehand. *Rivera*, 2013 IL 112467, ¶ 42. Instead, the relevant inquiry, according to our supreme court, is whether the attorney had a "professional obligation to withdraw as defense counsel" under Illinois Rule of Professional Conduct 3.7 (Ill. R. Prof. Conduct R. 3.7 (eff.

Aug. 1, 1990)). See *Rivera*, 2013 IL 112467, ¶ 40 ("Rule 3.7 required [defense counsel] to withdraw from his representation of defendant, and we find, therefore, that the trial court did not abuse its discretion in disqualifying [defense counsel]").

¶ 41        At the time of Koen Jr.'s disqualification, Rule 3.7 provided:

> "(a) A lawyer shall not accept or continue employment in contemplated or pending litigation if the lawyer knows or reasonably should know that the lawyer may be called as a witness on behalf of the client, except that the lawyer may undertake the employment and may testify:
>
>> (1) if the testimony will relate to an uncontested matter;
>>
>> (2) if the testimony will relate to a matter of formality and the lawyer reasonably believes that no substantial evidence will be offered in opposition to the testimony;
>>
>> (3) if the testimony will relate to the nature and value of legal services rendered in the case by the lawyer or the firm to the client; or
>>
>> (4) as to any other matter, if refusal to accept or continue the employment would work a substantial hardship on the client." Ill. R. Prof. Conduct R. 3.7 (eff. Aug. 1, 1990).

In this case, we find Rule 3.7 mandated Koen Jr.'s withdrawal from representation. Koen Jr.'s involvement in the events surrounding this matter was sufficient that he reasonably should have known he would likely be called as a witness by the State[3]; his correspondence with UW-Chicago and the tenants were important pieces of evidence. Because Koen Jr. refused to withdraw pursuant to Rule 3.7, we find the trial court did not abuse its discretion in disqualifying him from representing his father.[4]

---

[3]The text of Rule 3.7 at the time of Koen Jr.'s disqualification required a lawyer to withdraw "if the lawyer [knew] or reasonably should [have known] that the lawyer may be called as a witness on behalf of the client." Ill. R. Prof. Conduct R. 3.7 (eff. Aug. 1, 1990). Case law illustrates this version of Rule 3.7 additionally required withdrawal if the attorney may be called as a witness by the State. See, *e.g.*, *People v. Reed*, 298 Ill. App. 3d 285, 295 (1998) (where "the State argued that it might call [defense counsel] as a witness," the court concluded "Rule 3.7 mandated [defense counsel's] withdrawal"); see also *Rivera*, 2013 IL 112467, ¶ 41 (citing with approval *People v. Reed*, 298 Ill. App. 3d 285 (1998)).

[4]Rule 3.7 was revised between the disqualification hearing and trial in the instant case. The current version of Rule 3.7 now provides:

> "(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>> (1) the testimony relates to an uncontested issue;
>>
>> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>>
>> (3) disqualification of the lawyer would work substantial hardship on the client.

- 10 -

Koen next argues he was denied a fair trial when the court allowed Barry Goldberg to testify regarding the Act. According to Koen, Goldberg improperly "offer[ed] legal conclusions that were determinative of the outcome of this case." Koen, however, did not object to any of the now complained-of testimony at trial. As a result, Koen has forfeited this issue on appeal. See *Enoch*, 122 Ill. 2d at 186. Despite the State having argued forfeiture of this issue in its brief, Koen has not asked for plain-error review on appeal. Koen has likewise forfeited this argument as well. See *People v. Nieves*, 192 Ill. 2d 487, 503 (2000). Therefore, we need not address the merits of Koen's assertions regarding Goldberg's testimony.

IV. Failure to Instruct Jury

Koen claims he was denied a fair trial when the court did not instruct the jury on the law governing the reinstatement of nonprofit corporations under the General Not For Profit Corporations Act. Koen did not object to the jury instructions at trial and did not tender alternative instructions to the trial court. Under Supreme Court Rule 366(b)(2)(i), "[n]o party may raise on appeal the failure to give an instruction unless the party shall have tendered it." Ill. S. Ct. R. 366(b)(2)(i) (eff. Feb. 1, 1994). Koen thus forfeits the issue. See *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). Koen must therefore seek review under Supreme Court Rule 451(c), which states, "substantial defects are not waived by failure to make timely objections thereto if the interests of justice require." Ill. S. Ct. R. 451(c) (eff. Apr. 8, 2013). This rule is coextensive with the plain-error doctrine. *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). In order for us to review Koen's arguments under the plain-error doctrine, Koen must show: "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *Id.* We find Koen does not meet the requirements for plain-error review because no clear or obvious error occurred.

At trial, the court instructed the jury of the elements of the crimes charged. As noted, defense counsel did not object to these instructions and did not tender any alternative instructions. Thus, for there to have been "clear and obvious error" the court must necessarily have had a duty to *sua sponte* instruct the jury as to the provisions of the Act. Case law provides that such a duty does not exist. Generally, "the trial court has no obligation to

---

> (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9." Ill. R. Prof. Conduct (2010) R. 3.7 (eff. Jan. 1, 2010).

The present iteration of Rule 3.7 appears to grant attorneys more leeway by requiring counsel to withdraw in situations where one is "likely to be a *necessary* witness." (Emphasis added.) Ill. R. Prof. Conduct (2010) R. 3.7 (eff. Jan. 1, 2010). Nonetheless, we find either version of Rule 3.7 would have mandated Koen Jr.'s withdrawal. Indeed, as the trial court noted, "the State may find it *necessary* to call [Koen Jr.] as a witness." (Emphasis added.)

instruct on its own motion." *People v. Parks*, 65 Ill. 2d 132, 137 (1976). However, to ensure a fair trial in criminal cases, "the trial court must instruct the jury on such basic matters as the elements of the offense, the presumption of innocence, and the burden of proof." *People v. Green*, 225 Ill. 2d 612, 622 (2007). The trial court properly instructed the jury as to these matters and Koen does not complain the trial court failed to do so. Accordingly, no clear and obvious error occurred and Koen fails to meet the requirements for plain-error review.

¶ 47    In his brief, Koen falls back on a two-sentence argument made in passing, which claims defense counsel was ineffective for failing to request an instruction on the Act. While Koen cites to cases where defense counsel was ineffective for not requesting a particular jury instruction, he makes no specific argument as to why Koen's defense counsel was ineffective in this matter. Even assuming this suffices as properly raising such a claim on appeal, this argument still must fail.

¶ 48    In Illinois, a claim of ineffective assistance of counsel requires a defendant to prove: "(1) counsel's performance fell below an objective standard of reasonableness; and (2) absent counsel's deficient performance there is a reasonable probability that the result of the proceeding would have been different." *People v. Harris*, 206 Ill. 2d 293, 303 (2002). Furthermore, "reviewing courts entertain a strong presumption that the attorney's performance was a product of sound trial strategy and professional judgment." *Id.* (citing *Strickland v. Washington*, 466 U.S. 668, 689 (1984)). Koen does not meet this standard because defense counsel's decision not to request a different jury instruction did not fall below an objective standard of reasonableness. Indeed, it appears more likely the lack of such an instruction benefitted Koen. According to Koen, without an instruction on the Act, "the jurors were required entirely to speculate as to whether the law deemed Koen's control over the property as unauthorized." As previously addressed, however, no reasonable interpretation of the Act authorized Koen to reinstate UW-Harvey. See *supra* ¶¶ 29-34. Thus, instructing the jurors on the provisions of the Act would have plainly established Koen was *not* authorized to take control over the property. Such an outcome would have obviously been detrimental to Koen's case and, accordingly, his defense counsel's actions do not give rise to a claim for ineffective assistance of counsel.

¶ 49                              V. Prejudicial Closing Arguments

¶ 50    Koen contends he was denied a fair trial because the prosecutor characterized the State of Illinois as the "victim" during closing arguments. Koen claims this characterization "improperly urged the jurors to view themselves as victims and was designed solely to inflame the passions and prejudices of the jury." We are not persuaded by Koen's argument that this characterization amounts to reversible error.

¶ 51    A prosecutor has wide latitude during closing arguments. *People v. Wheeler*, 226 Ill. 2d 92, 123 (2007); *People v. Blue*, 189 Ill. 2d 99, 127 (2000). "In closing, the prosecutor may comment on the evidence and any fair, reasonable inferences it yields ***." *People v. Nicholas*, 218 Ill. 2d 104, 121 (2005). A State's closing argument leads to reversal only if the prosecutor's remarks created "substantial prejudice." *Wheeler*, 226 Ill. 2d at 123; *People v. Johnson*, 208 Ill. 2d 53, 64 (2003). Substantial prejudice occurs "if the improper remarks

constituted a material factor in a defendant's conviction." *Wheeler*, 226 Ill. 2d at 123. When reviewing claims of prosecutorial misconduct in closing arguments, a reviewing court will consider the entire closing arguments of both the prosecutor and the defense attorney, in order to place the remarks in context. *Id.* at 122; *Johnson*, 208 Ill. 2d at 113. Accordingly, "[s]tatements will not be held improper if they were provoked or invited by the defense counsel's argument." *People v. Glasper*, 234 Ill. 2d 173, 204 (2009).

¶ 52 We note that it is not clear whether the appropriate standard of review for this issue is *de novo* or abuse of discretion, based on an apparent conflict between *Wheeler* and *Blue*. See *People v. Land*, 2011 IL App (1st) 101048, ¶¶ 148-49 (and cases cited therein). We need not address the conflict in detail because, taking all of the closing arguments into consideration, Koen's objections fail under either standard.

¶ 53 As the trial court accurately remarked, the State's comment was "invited." The State made the allegedly improper argument in passing during the middle of its rebuttal when it stated, "[t]he victim is [UW-Harvey]. Actually, as Barry Goldberg was here to say the victim [*sic*] are the People of the State of Illinois and that's who's bringing the charges." After considering the entirety of closing arguments, we agree that the State was simply responding to defense counsel's implication that Koen's actions caused no harm; in its closing, defense counsel compared the reinstatement of UW-Harvey to the reclaiming of a discarded appliance from an alley. Thus, the State could fairly contradict this implication with its comment, a conclusion supported by the testimony of Barry Goldberg.

¶ 54 Moreover, even assuming the characterization was not invited by defense counsel's closing argument, Koen fails to demonstrate how these comments amounted to "substantial prejudice." The State did not present the alleged improper comments as an important part of its closing argument, nor did the comments appear designed to invoke outrage from the jury. In fact, after defense counsel's objection was overruled, the State dropped this line of argument and continued with its rebuttal. Whatever effect these comments had on the jury was almost certainly insignificant and therefore we do not find that they were a material factor in Koen's conviction.

¶ 55                                         VI. Mittimus

¶ 56 Koen lastly claims the mittimus should be corrected to accurately reflect the time he spent in custody prior to his incarceration. The mittimus currently provides Koen should receive credit for 83 days. Koen argues the mittmus should state he is to receive a total of 396 days of credit for time served; according to Koen, he served 8 days prior to posting bond in this case, 293 days prior to posting bond on the postbond charges, 70 days between the conclusion of trial and the sentencing hearing, and 25 days between the conclusion of sentencing and the September 19, 2011 hearing. While we do not dispute the number of days Koen actually served, we disagree that we should correct the mittimus in this case to reflect the 293 days served on the postbond charges.

¶ 57 The additional 293 days of credit Koen seeks relate to time spent in custody as a result of the postbond charges. Per Illinois law, however, "the offender shall be given credit on the

- 13 -

determinate sentence or maximum term and the minimum period of imprisonment for [the number of days] spent in custody *as a result of the offense for which the sentence was imposed*." (Emphasis added.) 730 ILCS 5/5-4.5-100(b) (West 2010); see also, *e.g.*, *People v. Jones*, 241 Ill. App. 3d 262 (1993). As the trial court initially noted, "there is no reason [Koen] should be given credit for time on other matters," which are "separate and distinct" from the case Koen currently appeals. Koen therefore relies on later statements made by the trial court on September 19, 2011, to support his assertion the mittimus should be corrected in this case to include the 293 days of credit. These statements do not stand for that proposition. At the plea hearing on the postbond charges, the trial court stated, "[a]s to these cases, it's 293 additional days," using "these cases" to refer to the postbond charges. In so doing, the trial court ordered Koen was entitled to 293 days of credit for time served on his sentence for the postbond charges, not for the instant case.

¶ 58        While Koen is not entitled in this case to the additional 293 days of credit for time served on the postbond charges, he is entitled to the additional 25 days of credit for the time spent in custody between his sentencing hearing and September 19, 2011 plea hearing. Unlike the 293 days requested by defendant, these 25 days were served as a result of "the offense for which the sentence was imposed." See *People v. Latona*, 184 Ill. 2d 260, 272 (1998) ("defendant should be given credit for any time served in county custody [prior to] sentencing on the instant offenses, as well as any additional time in county custody thereafter"). During the time Koen served the 25 days, he had previously been released on the postbond charges and, if not for his conviction in the instant case, would have been free awaiting the September plea hearing. Instead, Koen remained in custody while the the trial court stayed the issuance of the mittimus pending further proceedings. The trial court accounted for this time spent in custody post-conviction in its initial calculation of 83 days. The trial court then acknowledged Koen was entitled to more credit for this time served when it stated, "[a]s to that case, it was 83 [days] on August 25 plus additional time to today's date which is additional 20 something days." Context reveals the trial court used "that case" to refer to the instant case.[5]

---

[5]The record provides the following:

"MR. THEDFORD [defense counsel]: Just for clarification on the time credit, my client has a very good issue. He received credit for time on this case ending in 230.

THE COURT: The first case which was a jury trial. Yes.

MR. THEDFORD [defense counsel]: He received credit on the date of sentencing which at that point was about 383 [*sic*] days.

THE COURT: Right. This is in addition.

MR. THEDFORD [defense counsel]: He wants to make sure he is getting credit in addition to that time.

THE COURT: Oh, yeah, he is. As to that case, it was 83 on August 25 plus additional time to today's date which is additional 20 something days. That's when I issued that mitt I said it was nunc pro tunc to that day. It's still calculated automatically as far as time. If there

¶ 59        Accordingly, we determine the mittimus should be corrected to indicate Koen is entitled to 103 days for time served in this matter. This number accounts for the 8 days Koen spent in custody before posting bond as well as the 95 days he spent in custody between the conclusion of trial on June 17, 2011, and the issuance of the mittimus on September 20, 2011. We find, however, Koen is not entitled to 293 days of credit in this case for the time he spent in custody on the postbond charges.

¶ 60                                          CONCLUSION

¶ 61        For the foregoing reasons, the decision of the circuit court of Cook County is affirmed.

¶ 62        Affirmed; mittimus corrected.

---

is an issue about this, I am happy to clear that up. As to these cases, it's 293 additional days. Any questions about that?"