NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 230415-U

NO. 4-23-0415

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 30, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Adams County |
| DWAYNE BRANDON, | ) | No. 17CF772 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Scott D. Larson, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Presiding Justice Cavanagh and Justice Harris concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the State's conduct did not constitute error.

¶ 2    In October 2017, the State charged defendant, Dwayne Brandon, with attempt
(first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) and aggravated domestic
battery (720 ILCS 5/12-3.3(a), 12-3.2(a)(1) (West 2016)). Following a January 2018 jury trial,
defendant was convicted on both counts. After a *Krankel* hearing (see *People v. Krankel*, 102 Ill.
2d 181, 464 N.E.2d 1045 (1984)) and the appointment of *Krankel* counsel, the trial court denied
defendant's motion to reconsider sentence and motion for a new trial.

¶ 3    Defendant appealed, arguing one of the State's lay witnesses improperly offered
an expert opinion, the State made improper comments during its closing argument, and the State
violated the advocate-witness rule and presented cumulative evidence. We affirm.

¶ 4                              I. BACKGROUND

¶ 5          In October 2017, officers responded to a call at a residence in Quincy, Illinois. At the scene, a female, later identified as T.N., lay on the ground, receiving assistance from emergency medical technicians (EMT). T.N. had two stab wounds, one on the left side of her neck and one close to her left shoulder. Officers observed defendant at the scene with blood on his pants. When asked who stabbed her, T.N. responded that defendant stabbed her. Officers then placed defendant under arrest. As a result of the incident, the State charged defendant with attempt (first degree murder) (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2016)) and aggravated domestic battery (720 ILCS 5/12-3.3(a), 12-3.2(a)(1) (West 2016)).

¶ 6          In January 2018, the matter proceeded to a jury trial. The State called Officer Mike Cirrincione, who testified about his observations and actions upon arriving at the scene. He testified defendant said, "I tried to kill that bitch. I tried to take that bitch out. Write that down."

¶ 7          The State next called T.N., who testified she married defendant in August 2017. They had been drinking on the day of the incident and got into an argument, which escalated to the point where defendant grabbed a kitchen knife and said, "I'm gonna kill you, bitch." Then, defendant stabbed her. T.N. managed to flee to a neighbor's house. After being transported to the hospital, T.N. made a video-recorded statement to the police. The State first played the recording without audio and admitted it into evidence. T.N. acknowledged she wrote a letter to the State upon defendant's request because she did not want her husband to go to jail. In the letter, T.N. claimed "that [she] had tripped" and she was "a hundred percent sure" she was "accidentally poked in the neck" by the knife. To impeach T.N., the State played the recording again, this time with audio. In the recording, T.N. told the police defendant stabbed her and tried to kill her.

¶ 8          The State called Ryan Bowers, an EMT who treated T.N. at the scene. Bowers first testified about his training and experience. As a paramedic, Bowers responded to medical and trauma calls, and he provided care to sick or injured people. Bowers completed a two-year special training program at Blessing Hospital and John Wood Community College. Bowers stated he was familiar with medicines and certain medical procedures and he had experience with life-threatening injuries. Bowers had been a paramedic for nine years, and he responded to approximately 500 calls per year. Bowers testified T.N. had significant blood loss, which concerned him because it could lead to shock, loss of consciousness, altered mental status, and even death. Bowers explained shock is "a reaction that your body compensates when you have a traumatic experience, whether it be blood loss or other injury of some sort." He testified T.N.'s shoulder wound could have penetrated her lung and caused death, depending on the angle. He testified T.N.'s neck wound could have damaged her spinal cord and led to paralysis or death. He also testified T.N.'s neck wound could have severed the arteries in her neck and resulted in rapid blood loss or "exsanguination." When Bowers asked T.N. what happened to her, T.N. responded her husband stabbed her and tried to kill her.

¶ 9          Defendant chose to testify in his defense. Like T.N., defendant testified they had been drinking when they began to argue. Defendant then offered a different reason for T.N.'s stab wounds. He testified he approached her while holding the knife, they began to fight, and they fell to the floor. He then grabbed the knife by the blade and just "poked her." On cross-examination, the State confronted defendant with comments he made to officers that he tried to kill T.N. Defendant insisted he did not remember them. After the eighth, "No, I don't remember," the State said, "That's a good thing [Officer Cirrincione] wrote it down because I

guess you can't remember a lot." Upon the ninth, "No, I don't remember," the State commented, "It's amazing how memory works, isn't it?" and concluded the cross-examination.

¶ 10 During its closing argument, the State quoted defendant's statement, "I tried to kill the bitch," and asserted:

> "In Adams County, in our county, when you do what he did, when you try to kill someone, we don't look the other way. We charge you with attempt first-degree murder. And the Judge is going to tell you that attempt first-degree murder, to prove that, the People have to prove two propositions and we have to prove them beyond a reasonable doubt."

After additional argument and playing the video of T.N.'s statement again, the State continued:

> "In Adams County, you don't get to do that. In Adams County, if you do those things, you will be charged. You will be arrested and you will be prosecuted to the fullest extent of the law. And now we rely on you, members of the community to look at that person and say no, you don't get to do it. This case has been proven beyond a reasonable doubt in our minds and you, sir, are guilty. You are guilty of attempt first-degree murder to T.N., and you are guilty of aggravated domestic battery. Find just that."

The State then concluded its closing argument.

¶ 11 The jury found defendant guilty on both counts. During the March 2018 sentencing hearing, the State dismissed the aggravated domestic battery count because it "fairly

and appropriately merges into the attempt (first degree murder) charge." The trial court sentenced defendant to 20 years in prison.

¶ 12     In July 2018, based on a claim of ineffective assistance of counsel raised in defendant's *pro se* motion for a new trial, the trial court held a *Krankel* inquiry and appointed counsel. *Krankel* counsel then filed a motion to reconsider the sentence and a motion for a new trial based on the ineffectiveness claims. The court denied both after a hearing.

¶ 13     This appeal followed.

¶ 14                              II. ANALYSIS

¶ 15     On appeal, defendant argues the State committed "many and varied errors and misconduct," identifying three specific purported errors and the cumulative errors therein. Defendant contends the State elicited improper opinion testimony from Bowers, made improper statements and created an "us-versus-them" mentality during closing argument, improperly repeated defendant's responses during cross-examination before asking its next question—a process the State initially referred to as "looping"—and offering cumulative, prejudicial evidence. Defendant also argued the cumulative errors committed by the State denied him a fair trial and amounted to plain error.

¶ 16     We start by noting defendant correctly acknowledges the forfeiture of the issues in his brief. Plain error is a well-established exception to forfeiture. *People v. Sebby*, 2017 IL 119445, ¶ 48, 89 N.E.3d 675. Reviewing courts find plain error (1) when "a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) when "a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness

of the evidence." (Internal quotation marks omitted.) *Sebby*, 2017 IL 119445, ¶ 48. The threshold determination "under either prong of the plain error doctrine is determining whether there was a clear or obvious error at trial." *Sebby*, 2017 IL 119445, ¶ 49. Defendant relies on second-prong plain error here. We take each argument in turn.

¶ 17                              A. Lay Witness Opinion Testimony

¶ 18            Defendant claims Bowers's testimony about T.N.'s injuries and how those injuries could cause death, as well as defining and describing two advanced medical terms, "shock" and "exsanguination," amounted to improper lay witness opinion testimony. Defendant acknowledges "the State inadvertently laid proper foundation for him to testify as an expert" but contends Bowers did not in fact possess the relevant qualifications to offer expert testimony.

¶ 19            Illinois Rule of Evidence 701 (eff. Jan. 1, 2011) sets forth the foundational requirements for lay witness opinion testimony. *People v. Loggins*, 2019 IL App (1st) 160482, ¶ 79, 130 N.E.3d 432. In order to offer opinion testimony (1) a lay witness must have " 'personal knowledge of the matter,' " (2) "[t]he opinion or inference must also be 'helpful to a clear understanding of the witness' testimony or the determination of a fact in issue,' " and (3) the opinion or inference should " 'not [be] based on scientific, technical, or other specialized knowledge within the scope of Rule 702.' " *Loggins*, 2019 IL App (1st) 160482, ¶ 79 (quoting Ill. R. Evid 701 (eff. Jan 1, 2011)). "Lay witness opinion testimony is admissible where the facts could not otherwise be adequately presented or described to the fact finder in such a way as to enable the fact finder to form an opinion or reach an intelligent conclusion." *People v. Novak*, 163 Ill. 2d 93, 102, 643 N.E.2d 762, 767 (1994), *abrogated on other grounds by People v. Kolton*, 219 Ill. 2d 353, 848 N.E.2d 950 (2006).

¶ 20    On the other hand, "[a]n individual will be permitted to testify as an expert if that person's experience and qualifications afford him or her knowledge that is not common to laypersons, and where such testimony will aid the fact finder in reaching its conclusion." *Novak*, 163 Ill. 2d at 104. "The expert may gain his or her knowledge through practical experience rather than scientific study, training, or research." *Novak*, 163 Ill. 2d at 104. "There is no precise requirement as to how the expert acquires skill or experience." *Novak*, 163 Ill. 2d at 104. "The burden of establishing the qualifications of an expert witness is on the proponent of the expert's testimony." *Novak*, 163 Ill. 2d at 104. It is within the discretion of the trial court to determine whether a witness has been qualified as an expert. *People v. Jordan*, 103 Ill. 2d 192, 208, 469 N.E.2d 569, 576 (1984).

¶ 21    Our supreme court in *Novak* concluded the testimony of two witnesses was admissible as expert testimony despite being inadmissible as lay witness opinion testimony, even when the State did not call the witnesses as experts. *Novak*, 163 Ill. 2d at 99, 102. In *Novak*, which involved an aggravated criminal sexual assault charge, the defendant lured a victim under the pretenses of improving the victim's baseball skills and then committed the offense. *Novak*, 163 Ill. 2d at 97. To rebut the defense's position "that defendant only applied various sets of muscle strength and flexibility exercises to the victim's neck and shoulders," the State called two witnesses. *Novak*, 163 Ill. 2d at 98-99. The two witnesses had been professional athletes and trainers and testified to their opinions concerning the defendant's alleged training methods. *Novak*, 163 Ill. 2d at 99-101. The supreme court found no error in the witnesses offering expert testimony, finding that "[t]hrough education, training, experience, or a combination of each, these witnesses possessed knowledge that is not common to the average citizen" and "this knowledge aided the jury in reaching its conclusion." *Novak*, 163 Ill. 2d at 104.

¶ 22          Here, defendant contends Bowers lacked the qualifications to provide expert testimony that the wounds of T.N. and the blood loss were life-threatening. Even if we found testimony about stab wounds on the neck and left shoulder and the fact substantial blood loss could cause death was beyond the knowledge of a lay witness, it was not an abuse of discretion for the trial court to conclude Bowers did possess the relevant qualifications as an expert. Bowers received training and education from Blessing Hospital and John Wood Community College. He had nine years' experience as a paramedic, and he responded to almost 500 calls each year. Bowers was familiar with medicines and certain medical procedures and has seen life-threatening injuries. Recall, "[t]here is no precise requirement" for how a person attains the requisite skill or experience to offer expert testimony. *Novak*, 163 Ill. 2d at 104. Even though the State did not formally offer Bowers as an expert witness, as in *Novak*, the State provided sufficient evidence to show Bowers possessed the requisite knowledge, skill, experience, training or education to opine on T.N.'s injuries. Specifically, Bowers's nine years of experience and training as a paramedic qualified him to testify regarding the seriousness of stab wounds to T.N.'s neck and shoulder and her substantial blood loss. Therefore, the  court did not abuse its discretion by allowing Bowers to testify accordingly. Since there was no error, there can be no plain error. See *Sebby*, 2017 IL 119445, ¶¶ 48-49.

¶ 23          Defendant cites *People v. Jackson*, 2017 IL App (1st) 142879, 82 N.E.3d 194, where the court applied *Novak* but found the two paramedics' testimony inadmissible. There, the defendant was charged with kicking a police officer in the shins when the police officer responded to paramedics who were tendering help to the defendant. *Jackson*, 2017 IL App (1st) 142879, ¶ 1. As his defense, the defendant introduced evidence indicating he was having a seizure. *Jackson*, 2017 IL App (1st) 142879, ¶ 15. The paramedics, though unable to medically

examine the defendant, testified the defendant did not have a seizure. *Jackson*, 2017 IL App (1st) 142879, ¶¶ 15-16. The court found the paramedics' testimony inadmissible, concluding the paramedics were not trained to diagnose seizures. *Jackson*, 2017 IL App (1st) 142879, ¶ 52.

¶ 24        *Jackson* is distinguishable. There, the paramedics essentially rendered a diagnosis, which they were not qualified to do. *Jackson*, 2017 IL App (1st) 142879, ¶¶ 52-53. The paramedics never testified to any specialized training or experiences relating to seizures. *Jackson*, 2017 IL App (1st) 142879, ¶ 52. Here, Bowers's testimony on the seriousness of T.N.'s condition did not exceed his education and experience as a paramedic. Besides his training, Bowers testified that he provided care to sick and injured people and had seen life-threatening conditions. The trial court did not abuse its discretion in admitting Bowers's testimony. Consequently, there can be no plain error. *Sebby*, 2017 IL 119445, ¶¶ 48-49.

¶ 25                              B. "Us-Versus-Them" Mentality

¶ 26        Defendant next claims the State used an "us-versus-them" mentality during its closing argument, highlighting two statements. The State began its argument by repeating defendant's statement that he tried to kill T.N. and saying, "In Adams County, in our county, when you do what he did, when you try to kill someone, we don't look the other way. We charge you with attempt first-degree murder." In ending its closing argument, the State returned to this theme:

> "In Adams County, you don't get to do that. In Adams County, if
> you do those things, you will be charged. You will be arrested and
> you will be prosecuted to the fullest extent of the law. And now we
> rely on you, members of our community to look at that person and
> say no, you don't get to do it."

- 9 -

¶ 27    "[P]rosecutors are afforded wide latitude in closing argument and improper remarks will not merit reversal unless they result in substantial prejudice to the accused." *People v. Redd*, 173 Ill. 2d 1, 30, 670 N.E.2d 583, 597 (1996). "In reviewing a challenge to remarks made by the State during closing argument, the comments must be considered in the context of the entire closing statements of the parties." *People v. Williams*, 192 Ill. 2d 548, 573, 736 N.E.2d 1001, 1015 (2000). "A reviewing court will find reversible error only if the defendant demonstrates that the remarks were improper and that they were so prejudicial that real justice was denied or the verdict resulted from the error." *People v. Neal*, 2020 IL App (4th) 170869, ¶ 166, 150 N.E.3d 984. "Generally, arguments urging a fearless administration of justice or commenting unfavorably on the evils of crime do not constitute error." *People v. Blue*, 189 Ill. 2d 99, 128-29, 724 N.E.2d 920, 935 (2000). On the other hand, urging the jurors to send a message by their verdict is improper because it does not tend to make the fact of the defendant's guilt more or less true. *People v. Johnson*, 208 Ill. 2d 53, 78, 803 N.E.2d 405, 420 (2003), *as modified on denial of reh'g* (Jan. 26, 2004); *Blue*, 189 Ill. 2d at 132.

¶ 28    In *Johnson*, the State included the following remarks in its closing argument:

" '[T]hey think they run this society. Ladies and gentlemen, we are going to ask that you respond affirmatively that they do not. We as a society do not have to live in their twisted world. We do not have to accept their values. We don't have to allow that to happen in our community. We don't have to allow these guys blasting sawed off shotguns at other human beings. We as a people can stand together and say, no, you're not going to do it here. And if you do, you have

the—you will be held responsible for your actions.' " *Johnson*, 208 Ill. 2d at 77.

There, our supreme court reasoned remediation of society's ills distracted the jury from its responsibility to consider the guilt or innocence of an individual. *Johnson*, 208 Ill. 2d at 77-78. There, the arguments by the State sought to engender an "us-versus-them" mentality that is "inconsistent with the inherent principles of the criminal trial process." *Johnson*, 208 Ill. 2d at 80. When the State, through "an extended and general denunciation of society's ills," incites the jury to act out of undifferentiated passion and outrage, rather than reason and deliberation, the comments are improper. *Johnson*, 208 Ill. 2d at 79.

¶ 29 However, the *Johnson* court acknowledged that "*limited* prosecutorial exhortations are proper where it is made clear to the jury that its ability to effect general and specific deterrence is dependent *solely* upon its careful consideration of the specific facts and issues before it." (Emphases in original.) *Johnson*, 208 Ill. 2d at 79 (citing *People v. Harris*, 129 Ill. 2d 123, 159, 544 N.E.2d 357, 372 (1989)). In *Harris*, the State remarked during its closing argument that the jurors enjoyed

> " 'a unique opportunity *** to do something about crime. *** We
> listen to it on the news, in the newspaper ***. Everybody hears
> about crime. Nobody does anything about it. You have a unique
> opportunity to actually do something about crime on your streets.
> *** You are the only ones that sit between this man, this ticking
> bomb, and that door.' " (Internal quotation marks omitted.) *Harris*,
> 129 Ill. 2d at 159.

The court condoned such an argument because it "apparently intended to persuade the jurors to convict because by convicting they would prevent both crime in general, and further crime by this defendant." *Harris*, 129 Ill. 2d at 159.

¶ 30 Here, we cannot conclude the State's closing argument ran afoul of the rule in *Johnson*. The State did say, "And now we rely on you, members of our community to look at that person and say no, you don't get to do it," like urging to send a message. However, the State made no mention of "society's ills." *Johnson*, 208 Ill. 2d at 79. Rather, the State's argument focused more on defendant as an individual by referring only to him and his conduct. By recounting the specific facts of this case in painstaking detail, the State couched the jury's charge in relation to defendant specifically, and not to deterring crime generally. See *Harris*, 129 Ill. 2d at 159. The State did not mention society's problem with violence or urge the jury to "send a message" responding to that problem, like it did in *Johnson*. *Johnson*, 208 Ill. 2d. at 78. The State spoke only of defendant and the legal repercussions he would face. It was a statement about the consequences of committing attempt (first degree murder) and aggravated domestic battery, including prosecution "to the fullest extent of the law." The State also restated the burden of proof beyond a reasonable doubt following both the consequence of committing a crime and a similar statement under the same theme during the closing argument. We do not find an "us-versus-them" mentality engendered in the context found in *Johnson* to incite the jury to act out of undifferentiated passion and outrage. Therefore, in this context, in light of the entire closing argument, we do not believe the two statements referencing Adams County were improper. See *Williams*, 192 Ill. 2d at 573.

¶ 31 Defendant directs our attention to *People v. Wheeler*, 226 Ill. 2d 92, 129, 871 N.E.2d 728, 748 (2007), where our supreme court held, "The prosecutor's closing argument ***

appears deliberately designed to forge just the sort of 'us-versus-them' mentality decried by this court in *Johnson* and foster a situation where jurors might feel compelled to side with the State and its witnesses in order to ensure their own safety." There, the prosecutor framed himself as the underdog and the only person seeking justice for the victim, disparaged the defense attorneys, compared a sitting trial judge's testimony to former United States President Bill Clinton's evasive, perjured testimony about Monica Lewinsky, bolstered police officer testimony, posed a hypothetical where the jurors call 9-1-1 but have to hold because police could not respond to their emergencies because they were writing reports, and generally instilled fear into the jurors. *Wheeler*, 226 Ill. 2d at 107-113, 129. The State's two comments about Adams County here do not compare to those statements in *Wheeler*. There were no personal attacks. The State did not frame itself as a lone underdog seeking justice for the victim. Nor did the State appeal to the jurors' fears by asking them to imagine themselves as victims. The State asserted Adams County does not tolerate defendant's conduct, prosecutes such conduct, and asked the jury to convict defendant. These comments did not create an "us-versus-them" mentality like the comments did in *Wheeler*.

¶ 32　　　　We do not find the State's statements during closing argument improper. They did not result in prejudice to defendant, let alone substantial prejudice, nor did the verdict result from them. *Neal*, 2020 IL App (4th) 170869, ¶ 166; *Redd*, 173 Ill. 2d at 30. The victim, although unwilling, provided substantial evidence of defendant's intent, and defendant's own statements did as well. Again, because no clear, obvious error occurred, there can be no plain error. See *Sebby*, 2017 IL 119445, ¶¶ 48-49.

¶ 33　　　　　　　　　　　　　　C. Other Errors

¶ 34    Finally, defendant argues the State violated the advocate-witness rule by commenting, "That's a good thing [Officer Cirrincione] wrote it down because I guess you can't remember a lot," elicited prior consistent statements by constantly "looping" testimony when it incorporated the last answer given into the subsequent question, and presented cumulative evidence by repeatedly playing the recording of T.N.'s statement. We review each allegation in turn.

¶ 35    To support his claim the State violated the advocate-witness rule, defendant points to a series of questions asked by the State during cross-examination of defendant about whether he made a statement about his intention to kill T.N. After defendant responded to all of the questions with, "No, I don't remember," the State commented, "That's a good thing [Officer Cirrincione] wrote it down because I guess you can't remember a lot. *** It's amazing how memory works, isn't it?" "The advocate-witness rule precludes an attorney from acting as advocate and witness in the same case." (Internal quotation marks omitted.) *People v. Koen*, 2014 IL App (1st) 113082, ¶ 39, 6 N.E.3d 354. Here, the State did not act as a witness rebutting defendant's testimony. The assistant state's attorney did not take the oath and the stand as all other witnesses did. The jury instruction clearly admonished the jury that "[t]he evidence which you should consider consists only of the testimony of the witnesses and exhibits which the Court has received," and "[n]either the opening statements nor closing arguments are evidence and any statement or argument made by the attorneys which is not based on the evidence should be disregarded." Therefore, we observe no violation of the advocate-witness rule.

¶ 36    Defendant relies on *Blue* to support his claim the State violated the advocate-witness rule, but we find it inapplicable. In *Blue*, before trial, two assistant state's attorneys interviewed a witness after a warrant was issued for her arrest. *Blue*, 189 Ill. 2d at 134.

During cross-examination of that witness, the assistant state's attorneys who interviewed the witness repeatedly interjected testimony of their own through thinly veiled "objections," especially about the contents of the interview. *Blue*, 189 Ill. 2d at 135. For example, one of the assistant state's attorneys objected, calling the witness's testimony a lie. Then, on redirect examination, the other assistant state's attorney argued with the witness about what he previously said to the witness and the witness's condition at the time of the interview. Our supreme court determined the State's objections and questioning "offered the jury a simultaneous rebuttal to [the witness's] account of an event where both [assistant state's attorneys] were present." *Blue*, 189 Ill. 2d at 137. This case is distinguishable. Here, the State's comment, "That's a good thing [Officer Cirrincione] wrote it down because I guess you can't remember a lot," while certainly sarcastic commentary not to be encouraged, did not serve to rebut defendant's testimony. The rebuttal came from the testimony of the police officers rather than the testimony of the attorney. This record does not present a situation analogous to *Blue*.

¶ 37 Defendant also contends the State's constant "looping" was an improper admission of prior consistent statements from the witness. Defendant describes "looping" as the State repeating a witness's answer to one question at the beginning of the next question. For example, from Bowers' testimony, he answered one question with "She kept repeating that, 'He tried to kill me,' " and the State phrased the next question as follows: "She kept repeating, 'He tried to kill me.' How long did it take to get to the hospital?" The *non sequitur* is obvious. Essentially, defendant argues the State repeated the testimony the jury just heard by "looping," which constituted an admission of the prior consistent statements. We find defendant's argument misplaced. "As a general rule, proof of statements made by a witness out of court harmonizing with his theory is inadmissible." *People v. Emerson*, 97 Ill. 2d 487, 501, 455 N.E.2d 41, 47

(1983). "A witness may not testify in court as to statements made out of court for the purpose of corroborating his trial testimony concerning the same subject." *People v. Tisdel*, 201 Ill. 2d 210, 216, 775 N.E.2d 921, 925 (2002). The rule is not applicable here because the "looping" was based on an immediately preceding in-court statement and thus could not be an out-of-court statement. Also, as discussed above, the State's questioning during its direct examination was not evidence. Therefore, although we might question the practice—undoubtedly the prosecutor believed the technique was clever, but the jury listening to the repetition *ad nauseum* could very well find it irritating—we do not find it to be error.

¶ 38        Defendant contends testimony from officers that he said he intended to kill the victim on the day of the incident and the recording played multiple times at trial was cumulative evidence. We disagree. "Cumulative evidence and extensive evidence are not the same thing." *People v. Jones*, 2020 IL App (4th) 190909, ¶ 150, 173 N.E.3d 978, 996. Cumulative evidence "adds nothing to what was already before the jury." *Jones*, 2020 IL App (4th) 190909, ¶ 150. At first blush, it may appear the recording added nothing to what was already presented to the jury. However, the State replayed it after first publishing it to the jury to either impeach T.N. or rebut the defense's theory. Further, the video was originally shown without sound, and only to show the extent of T.N.'s injuries. Once T.N. testified, the actual sound recording was published for proper impeachment. Therefore, it added to what the jury heard. The recording was extensive evidence, not cumulative. See *Jones*, 2020 IL App (4th) 190909, ¶ 150.

¶ 39        Defendant also contends testimony from officers about his statement he intended to kill the victim on the day of the incident was cumulative. We note this testimony was elicited in rebuttal. When testimony might have been offered during a party's case in chief, the question of whether it should be admitted in rebuttal is discretionary with the trial court. *Kupcikevicius v.*

*Fitzgibbons*, 41 Ill. App. 3d 405, 413, 354 N.E.2d 434, 441 (1976). Here, defendant on cross-examination denied knowledge of having told the officers he intended to kill the victim, saying, "I don't remember." In rebuttal, the State called officers to testify to defendant's statement. Thus, the State had good reason to present more evidence of what defendant said that night. We conclude the trial court did not abuse its discretion in admitting this testimony. Having found that none of defendant's allegations constituted error, there was no cumulative error. See *People v. Green*, 2017 IL App (1st) 152513, ¶ 118, 100 N.E.3d 491.

¶ 40                                          III. CONCLUSION

¶ 41          For the foregoing reasons, we affirm the trial court's judgment.

¶ 42          Affirmed.